### CAMFIELD et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1895.)

#### No. 517.

INCLOSURE OF PUBLIC LAND—ACT OF FEBRUARY 25. 1885.

The act of February 25, 1885, to prevent unlawful occupancy of the public land (23 Stat. c. 149), provides that all inclosures of public lands. to any of which lands the person making the inclosure had no bona fide claim or title at the time the inclosure was made, are unlawful. Defendant had acquired from the owners the right to use all the odd-numbered sections in two certain townships, and outside thereof, immediately adjoining the even-numbered sections lying within and on the margin of such townships, and erected on said odd-numbered sections a fence which inclosed the whole of such two townships, the even-numbered sections of which were government land. *Held*, that such inclosure was unlawful, although defendant had made gates at the section lines to give access to the government land, and without regard to any public advantages alleged to result from defendant's act. 59 Fed. 562, affirmed.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a suit by the United States against Daniel A. Camfield and William Drury, under the act of February 25, 1885 (23 Stat. c. 149), to compel the removal of an inclosure of public land. The circuit court entered a decree for the complainant, after sustaining exceptions to the answer as insufficient. 59 Fed. 562. Defendants appeal.

This was a bill filed by the United States against Daniel A. Camfield and William Drury, the appellants, in the circuit court of the United States for

the district of Colorado, under the provisions of an act of congress approved on February 25, 1885, entitled "An act to prevent unlawful occupancy of the public lands." 23 Stat. 321, c. 149. The first section of said act is as follows: "That all inclosures of any public lands in any state or territory of the United States, heretofore or to be hereafter made, erected or constructed by any person, party, association or corporation, to any of which land included within the inclosure, the person, party, association or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States, without claim, color of title or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited." By section 2 of said act it is made the duty of the district attorney of the United States for the proper district, when complaint is made to him by affidavit by any citizen of the United States, that section 1 of the act is being violated, to institute a civil suit, in the name of the United States, in the proper United States district or circuit court, against the person or persons charged with making the unlawful inclosure complained of. By said section, jurisdiction is also conferred upon any United States district or circuit court or territorial district court having jurisdiction over the locality where the land inclosed, or any part thereof, shall be situated, to hear and determine proceedings in equity, by writ of injunction, to restrain violations of the provisions of the act. It is also made the duty of said courts, in case any inclosure shall be found to be unlawful, to make the proper order, judgment, or decree for the destruction of the inclosure, in a summary way, unless the inclosure shall be removed by the parties complained of within five days after they are ordered to do so.

The bill in the present case charged, in substance, that the defendants, Daniel A. Camfield and William Drury, with intent to encroach and intrude upon the lands of the United States in an illegal manner, and to monopolize the use of the same for their own special benefit, did, on or about the 1st of January, 1893, build, construct, erect and maintain a fence which inclosed and included about 20,000 acres of the public domain of the United States, and that the effect of such inclosure was to exclude the United States and all other persons, except the defendants, therefrom; that the lands thus wrongfully inclosed consisted of all of the even-numbered sections in townships numbers 7 and 8 north of range 63 west of the sixth principal meridian. The bill of complaint further averred that said townships 7 and 8 lie within the limits of the grant made by the government to the Union Pacific Railroad Company; that the defendants had acquired from said railroad company the right to use all the odd-numbered sections of land which lie within said townships 7 and 8 and outside thereof immediately adjacent to the even-numbered sections lying within and on the margin of said townships, and that in building the fence complained of the defendants had constructed it entirely on odd-numbered sections either within or without townships 7 and 8 so as to completely inclose all of the government lands aforesaid, but without locating the fence on any part of the public domain so inclosed. The subjoined diagram of one township will serve to illustrate the manner in which the fence was constructed so as to inclose the even-numbered sections. The fence is indicated by the dotted lines.

The defendants admitted by their answer that they had constructed a fence so as to inclose all of the even-numbered sections in townships 7 and 8, substantially as set out above in the plaintiff's complaint, save and except that at each section line a swinging gate had been placed, to afford access to so much of the public domain as was inclosed by the aforesaid fence. By their answer the defendants sought to justify the erection of the fence in question on the ground that they owned all the odd-numbered sections in townships 7 and 8, and that they were engaged in building large reservoirs for

Diagram.

| | | | | | |
|---|---|---|---|---|---|
| 6 | 5 | 4 | 3 | 2 | 1 |
| 7 | 8 | 9 | 10 | 11 | 12 |
| 18 | 17 | 16 | 15 | 14 | 13 |
| 19 | 20 | 21 | 22 | 23 | 24 |
| 30 | 29 | 28 | 27 | 26 | 25 |
| 31 | 32 | 33 | 34 | 35 | 36 |

the purpose of irrigating the land by them owned, and much other land in that vicinity. They averred that in carrying out such irrigation scheme they found it necessary to fence their lands in townships 7 and 8 in the manner above described. They also denied that they had any intention of monopolizing the even-numbered sections inclosed by said fence, or to exclude the public therefrom. They further averred, in substance, that the work in which they were engaged was of great importance and utility, and would redound to the great advantage of the United States and its citizens. The answer was excepted to on the ground that it was insufficient to constitute a defense to the bill. This exception was sustained, and as the defendants declined to plead further a decree was entered in favor of the government, from which decree the defendants have appealed.

James W. McCreery (A. C. Patton, H. E. Churchill, and C. W. Bates, on the brief), for appellants.

Henry V. Johnson, U. S. Atty.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Section 1 of the act of February 25, 1885, supra, declared, in effect, that it should thereafter be deemed unlawful for any person, association, or corporation to make or maintain an inclosure which embraced within its limits any public land of the United States,

to which the person making or maintaining the inclosure had no claim or color of title, and to which he asserted no right under a claim made in good faith, with a view to the entry thereof at the proper land office under the general laws of the United States. The statute in question is general in its terms, and it contains no exceptions. It was within the power of congress to enact such a law; and, having enacted it, it is not within the province of the judiciary to inquire or to decide whether the measure was politic or impolitic, wise or unwise. The answer filed by the defendants admitted, in substance, that the defendants had caused an inclosure to be made which embraced within its limits more than 20,000 acres of the public domain. This admission brought them within the inhibitions of the law. It matters not what their intent may have been in making the inclosure. The courts charged with the enforcement of the law cannot say that the construction of a dam for purposes of irrigation is a work of such great utility and importance that, in the execution of the same, the plain mandate of the statute may be disregarded. In support of their contention that the answer disclosed a good defense to the bill, we have been referred by counsel for the appellants to the case of U. S. v. Douglas-Willan Sartoris Co., 3 Wyo. 288, 22 Pac. 92; but we cannot concur in the views expressed by the majority of the court in that case. We think that the defendants admitted that they had been guilty of a violation of the act of February 25, 1885, and that the facts pleaded by way of excuse do not amount to a justification of the unlawful act in question. The decree of the circuit court of the United States for the district of Colorado is therefore affirmed.